**Reverse and Remand, and Opinion Filed August 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01586-CV

**CATHIE REISLER, Appellant**
**V.**
**KEITH REISLER, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-50508-2010**

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Lang

Cathie Reisler appeals the trial court's final decree of divorce, dissolving her marriage to Keith Reisler and dividing their marital property. Cathie Reisler raises four issues on appeal arguing the trial court erred when it: (1) awarded Keith Reisler a disproportionate share of the community estate because it made numerous calculation errors in the property division; (2) failed to award her a disproportionate share of the community estate; (3) made her jointly and severally responsible for the fees for Paul French's services and for French's attorney's fees; and (4) valued the community's interest in the shares in medical investments for Plano Ambulatory Surgery Associates and Texas Health Center for Diagnostics and Surgery based on Keith Reisler's income approach valuations. During oral argument, in this appeal, the parties advised the Court that they had settled their dispute relating to issue three. Accordingly, we need not address that issue.

We conclude the trial court erred when it divided the parties' community estate. Also, Cathie Reisler did not preserve for appellate review her complaint that the trial court erred when it valued the community's interest in the shares in medical investments for Plano Ambulatory Surgery Associates and Texas Health Center for Diagnostics and Surgery based on Keith Reisler's income approach valuations. The portion of the trial court's final decree of divorce dissolving the marriage is affirmed and the portion dividing the parties' community estate is reversed and remanded for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2010, Keith Reisler filed for divorce from Cathie Reisler. In his first amended petition, Keith Reisler alleged insupportability and cruel treatment as grounds for the divorce, requested a disproportionate division of the parties' estate, and asserted a claim for tortious interference of current and prospective business relations. In her second amended counter-petition, Cathie Reisler alleged insupportability, adultery, and cruel treatment as grounds for the divorce, requested a disproportionate division of the marital estate, and asserted claims against Keith Reisler for constructive fraud, assault and battery, intentional infliction of emotional abuse and mental distress, and defamation of character, libel, and slander.

In January 2011, the parties entered into a pre-divorce settlement agreement, dividing $1,400,000 equally between them assigning it to their separate property. However, there is no pre-final decree order confirming the pre-divorce settlement as either party's separate property.

After a bench trial, the trial court took the division of the marital estate under advisement. Then, the trial court signed a memorandum ruling granting the parties divorce on the ground of insupportability, stating the values of the community assets, dividing the community estate, and awarding a judgment to Paul French for which Keith and Cathie Reisler were jointly and severally liable.

Cathie Reisler filed a motion for reconsideration of the trial court's memorandum ruling, which the trial court denied. Then, the trial court signed the final decree of divorce. The trial court made written findings of fact and conclusions of law. Cathie Reisler filed a motion for new trial, which was overruled by operation of law.

## II. JUST AND RIGHT DIVISION OF THE COMMUNITY PROPERTY

In issue one, Cathie Reisler argues the trial court erred when it awarded Keith Reisler a disproportionate share of the community estate because it made numerous calculation errors in the property division. She contends the following:

> Although the trial court attempted to make a 50/50 division of the community estate, the trial court abused its discretion by making several calculation errors in its findings of fact that, when corrected, show the trial court actually divided the community estate disproportionately—38.24% to [Cathie Reisler] and 67.76% to [Keith Reisler]. The evidence did not support a disproportionate division in [Keith Reisler's] favor.

Keith Reisler responds that there is nothing in the trial court's findings of fact or conclusions of law that states what percentage of the community estate each party was intended to receive or what calculation the trial court made when dividing the community estate. He contends that any assertion the trial court used the wrong values is pure conjecture, requiring the appellate court to make assumptions it cannot make.

### A. Standard of Review

An appellate court reviews a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). The trial court is afforded broad discretion in dividing the community estate and an appellate court must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Schlueter v. Schlueter*, 975 S.W.2d 584, 598 (Tex. 1998); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). A trial court does not abuse its discretion if there is

some evidence of a substantive and probative character to support the decision. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857. To determine whether the trial court abused its discretion, an appellate court considers whether the trial court: (1) had sufficient evidence upon which to exercise its discretion; and (2) erred in its exercise of that discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). The applicable sufficiency review comes into play with regard to the first question. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857. An appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857.

In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review. *Moroch*, 174 S.W.3d at 857; *see also In re A.B.P.*, 291 S.W.3d at 95 (discussing standard). When deciding if the trial court abused its discretion, the legal and factual sufficiency of the evidence are not independent grounds of reversible error, but instead constitute factors relevant to an appellate court's assessment of whether the trial court abused its discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied); *Moroch*, 174 S.W.3d at 857.

In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Mays v. Mays*, No. 13-05-00558-CV, 2007 WL 776684, at *2 (Tex. App.—Corpus Christi Mar. 15, 2007, pet. denied) (mem. op.); *Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.). An appellate court may not challenge a trial court's conclusions of law for factual sufficiency, but it may review the legal conclusions drawn from the facts to determine their correctness. *Hailey*, 176 S.W.3d at 383. If

–4–

an appellate court determines that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Mays*, 2007 WL 776684, at \*2; *Hailey*, 176 S.W.3d at 383.

When the appellate record contains a complete reporter's record, an appellate court reviews the trial court's findings of fact under the same standards for legal and factual sufficiency that govern the review of jury findings. *In re Marriage of C.A.S.*, 405 S.W.3d at 382; *Moroch*, 174 S.W.3d at 857. A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of the evidence to support the findings. *See In re Marriage of C.A.S.*, 405 S.W.3d at 382. In conducting a factual sufficiency review, appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* In evaluating the trial court's findings of fact, an appellate court must give substantial deference to the trial court's determination of the weight and credibility of the evidence. *Pelzig v. Berkebile*, 931 S.W.2d 398, 402 (Tex. App.—Corpus Christi 1996, no pet.). In a bench trial, the trial court acts as the fact finder and is the sole judge of the credibility of the witnesses. *Murff*, 615 S.W.2d at 700; *Hailey*, 176 S.W.3d at 383.

If an appellate court finds reversible error in any part of the trial court's property division that materially affects the just and right division of the community estate, it must remand for a new division of the entire community estate. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex. 1985).

### B. Findings of Fact and Conclusions of Law

Section 6.711(a) of the family code provides that in a suit for dissolution of marriage, on request by a party, the court shall state in writing its findings of fact and conclusions of law concerning: (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and (2) the value or amount of the community

estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented. TEX. FAM. CODE ANN. § 6.711(a) (West 2006); *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 380 (Tex. App.—Dallas 2013, no pet.). A trial court need not make findings of fact on undisputed matters. *Limbough v. Limbough*, 71 S.W.3d 1, 6 (Tex. App.—Waco 2002, no pet.). The obligation of the trial court is to make findings of fact and conclusions of law on the ultimate or controlling issues, but not on evidentiary issues. *Limbough*, 71 S.W.3d at 6. The trial court is not obligated to detail the facts that establish fault in the break-up of the marriage or one party's separate estate that forms the basis for the disproportionate division of the property. *Limbough*, 71 S.W.3d at 6.

### C. Applicable Law

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the trial court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006); *In re Marriage of C.A.S.*, 405 S.W.3d at 384. The property division need not be equal and the trial court may consider many factors when exercising its broad discretion to divide the marital property. *Murff*, 615 S.W.2d at 699; *In re Marriage of C.A.S.*, 405 S.W.3d at 384. Mathematical precision in dividing property in a divorce is usually not possible. *Murff*, 615 S.W.2d at 700. The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 384.

### D. Application of the Law to the Facts

Cathie Reisler's argument that the trial court made calculation errors, resulting in her actually receiving 38.24% and Keith Reisler receiving 61.76% of the community estate, is contained in four sub-arguments. Specifically, she asserts: (1) when the trial court identified the

parties' community property in finding of fact number 18, the trial court erroneously included both (a) the asset valued at $1,400,000, which represents the pre-divorce settlement of Keith Reisler and Cathie Reisler, and (b) the funds in Cathie Reisler's Merrill Lynch account number XXX15629 valued at $554,408.69, which was part of her share of the pre-divorce settlement funds; (2) the trial court erroneously assigned the debt on the medical office condominium to Keith Reisler while at the same time awarding him the condominium at a zero net equity; (3) the trial court failed to award either party the balance of a bank account, which it found was not held solely in Cathie Reisler's name and should not have included that account in the property division calculation; and (4) the trial court erroneously included her separate property bank account in the division of the community estate.

We first address what we have identified above as issue one, sub-argument 1, where Cathie Reisler focuses our attention on finding of fact number 18 and her share of the pre-divorce settlement funds. The trial court listed the $1,400,000 pre-divorce settlement, stating Keith Reisler and Cathie Reisler each were assigned $700,000 to their "separate estate." However, Cathie Reisler claims Merrill Lynch account number XXX15629 valued at $554,408.69, also listed in finding of fact number 18 as community property, was actually her share of that pre-divorce settlement. According to Cathie Reisler, the result was the trial court erroneously listed her portion of the pre-divorce settlement twice, once as part of the $1,400,000 pre-divorce settlement and again as the Merrill Lynch asset in her name. However, at the same time, finding of fact number 18 only listed Keith Reisler's portion of the pre-divorce settlement as part of the $1,400,000. She asserts there is no evidence in the record to support this erroneous listing of community property in finding of fact number 18. The result, she claims, was that the division of the community was disproportionate in Keith Reisler's favor. Keith Reisler responds that Cathie Reisler did not offer evidence to support this claim or trace the funds in the account.

In substance, the parties' arguments are focused on whether the trial court included Cathie Reisler's separate property in the community estate resulting in an unjust division.

In order to evaluate these contentions, we must review the trial court's findings of fact.[1] The trial court's finding of fact number 18 is a table listing the community property of the parties and the values. The table lists the pre-divorce settlement funds as follows:

[1] Finding of fact number 18 is reproduced here in order to show the trial court's method of listing the parties' community property:

| | |
|---|---|
| Real Property - Residence located at 2704 Redding Drive, Plano, Texas | $750,000.00 |
| Real Property - Commercial Property located at 3108 Midway Road, Unit[] 204, Plano, Texas | $0.00 (negative equity) |
| Household furniture, furnishings, goods, art objects, collectible, appliances and equipment in the possession of [Keith Reisler] or subject to his sole control. | $10,000.00 |
| Clothing, jewelry, personal effects in the possession of [Keith Reisler] or subject to his sole control. | $0 |
| Household furniture, furnishings, goods, art objects, collectibles, appliances and equipment in the possession of [Cathie Reisler] or subject to her sole control. | $30,000.00 |
| Clothing, jewelry, furs, personal effects in the possession of [Cathie Reisler] or subject to her sole control. | $80,000.00 |
| Funds on deposit in Schwab One checking account, Account number XXX303 | $601,109.56 |
| Funds on deposit in Schwab One checking account, Account number XXX230 and in an account under the control of Cathie Reisler. These funds were divided before the case was finalized as part of a pre-suit division. Each party was awarded $700,000 as part of their separate estate. | $1,400,000.00 |
| Funds on deposit in Chase Bank checking account, Account number XXX797 | $562.96 |
| Funds on deposit in Chase Bank business checking account, Account number XXX364 | $21,018.00 |
| Funds on deposit in Chase Bank business checking account, Account number XXX600 | $2,185.67 |
| Funds on deposit in Schwab One checking account, Account number XXXl10 | $262.22 |
| Individual retirement account in [Keith Reisler's] name managed by Schwab with account number ending in 1115 | $482,000.00 |
| 2004 Lexus LS 430 motor vehicle | $15,000.00 |
| 2008 Lexus RX 400 Motor vehicle | $24,000.00 |
| Shares in Lee Financial Borders - Real Estate Investment | $85,000.00 |
| Shares in Lee Financial Summit - Energy Partnership | $35,000.00 |
| Shares in Surgery Center of Plano | $142,727.00 |
| Shares in Texas Health Center for Diagnostics and Surgery | $276,556.00 |
| Shares in Patient-Physician Network Holding Company, LLC | $23,668.00 |
| Shares in AVEX Land Investments | $140,375.00 |

| | |
|---|---|
| Funds on deposit in Schwab One checking account, Account number XXX230 and in an account under the control of Cathie Reisler. These funds were divided before the case was finalized as part of a pre-suit division. Each party was awarded $700,000 as part of their separate estate. | $1,400,000.00 |

Also, the following portion of finding of fact no. 18, includes Cathie Reisler's Merrill Lynch account number XXX15629. She claims this account was shown by the evidence to be part of the $700,000 assigned to her in the pre-divorce settlement described in the box above.

| | |
|---|---|
| Merrill Lynch account xxx15629 (in Cathie Reisler's name) | $554,408.69 |

During the trial, Cathie Reisler traced the funds set aside to her in the pre-divorce settlement, which the trial court identified as being awarded to her as her separate property. First, Cathie Reisler's Exhibit No. 61 was admitted into evidence. That exhibit is a summary of the relief sought by Cathie Reisler and paragraph 20 states that she seeks "The Court [to] confirm as the separate property of [Cathie Reisler] the Merrill Lynch Account formerly, Charles Schwab account, of Cathie Reisler, Account Number XX15629, which consists of funds previously

| | |
|---|---|
| Shares in Methodist Hospital | $60,000.00 |
| Closely held business interest known as Keith J. Reisler, MD PA | $273,000.00 |
| UTMA account | Unknown |
| UGMA account | Unknown |
| Chase Bank College Account | Unknown |
| IRA held in Cathie Reisler's name, account no. xxx923 | $278,000.00 |
| Bank of America Account xxx3202 (in Cathie Reisler's name) | $7[,]811.33 |
| Merrill Lynch account xxx15629 (in Cathie Reisler's name) | $554,408.69 |
| Charles Schwab account xxx6353 (in Cathie Reisler's name) | $18,274.89 |
| Fidelity account xxx129 (in Cathie Reisler's name) | $65,114.14 |
| Fidelity account xxx370 (in the name of Cathie Reisler[] and David Berman) | $157,998 |

partitioned by the parties [in the pre-divorce settlement agreement] on or about January 17, 2011." Second, Cathie Reisler's Exhibit No. 85 was admitted into evidence. It contained her inventory, listing the Merrill Lynch account number XXX15629 as her separate property. Attached to her Exhibit No. 85 were bank statements showing that: (1) in January 2011, she had $708,272.55 in a Charles Schwab account number XXXX8221; (2) in November 2011, she transferred $548,554.73 out of the Charles Schwab account number XXXX8221; and (3) in November 2011, she transferred $548,545.01 into the Merrill Lynch account number XXX15629, the asset listed in finding of fact number 18 "in Cathie Reisler's name."

In addition, Keith Reisler testified that the $700,000 assigned to Cathie Reisler in the pre-divorce settlement was transferred by her out of the community property joint account to the separate Charles Schwab account number XXXX8221. Afterward, according to Cathie Reisler's evidence, she transferred the funds from Charles Schwab account number XXXX8221 to Merrill Lynch account number XXX15629. Below is the exchange, in relevant part, between Keith Reisler and his counsel:

| K.R.'s Counsel: | I'm going to show you what I've marked as Exhibit 42. It's a little bit out of order. Is this the statement showing the transfer of the 700,000 back into the joint account? |
|---|---|
| Keith Reisler: | Yes. This is the statement. And if you—and there's a second statement you have also, which actually shows the numbers. But if you go to Page 6 of 8 you'll see all of the funds that were transferred to Cathie. And if you add all that up, it comes out to $698,500. The reason it's not 700,000—700,000 is we used the values from the night before. So those are the changes for the day. |
| | On the next page, on Page 7 of 8, you see where she transferred out all of that and to another account. So you see the parentheses on the 26th. So it went in on the 10th. She left it in there for 16 days. When she transferred it out it actually had a value of 712,000. She testified yesterday that I had used the funds in the joint account before she had access to them. If you go to page—if you go to Page 5 of 8 you can see on 1/12/11 there was an autopayment to City of |

–10–

Plano for $119 which she had set up, and that was the only money that came out of that account.

. . . .

*Because, again, this is the $700,000 predivorce settlement that Cathie got in January 2011. The previous—one of the previous exhibits showed it going into the joint account. It stayed there for a several days. Then she transferred it into this account, 8221, and this shows the month she transferred it. It says, "Transfer, $712,000." On the left is what—you know, when she transferred that was a value she transferred, and that's what I said a couple of minutes ago, that when she transferred it out it had actually grown to 712,000. She testified it had been depleted by me before she ever even got it.*

(Emphasis added). Keith Reisler does not dispute that Cathie Reisler transferred the $708,272.55 pre-divorce settlement funds to Charles Schwab account number XXXX8221, and then $554,408.69, the funds remaining from her pre-divorce settlement, into the Merrill Lynch account number XX15629. Rather, Keith Reisler disputes only a collateral issue, not relevant here, as to whether he paid bills from those funds before Cathie Reisler transferred the funds.

On this record, Cathie Reisler has shown from the evidence that she traced the funds assigned to her in the pre-divorce settlement into the Merrill Lynch account number XXX15629. The parties agreed those funds were to be awarded as Cathie Reisler's separate property. She has also shown that the trial court included the Merrill Lynch account number XXX15629 in finding of fact number 18 as a community asset in addition to the pre-divorce settlement sum referred to above. Further, the record shows that the trial court did not treat Keith Reisler's portion of the pre-divorce settlement in a similar way as it did Cathie Reisler's portion as described above. That is, the trial court did not include as an additional community asset Keith Reisler's Charles Schwab account number XXX230, which held his share of the pre-divorce settlement funds awarded as separate property. The effect is that finding of fact number 18 erroneously lists an additional community asset as being held in Cathie Reisler's name.

–11–

We conclude Cathie Reisler has shown there is no evidence to support the inclusion of the Merrill Lynch account number XXX15629 in finding of fact number 18 in addition to the pre-divorce settlement sums assigned to Cathie Reisler as her "separate estate." Accordingly, distribution of the community assets was so unjust and unfair as to constitute an abuse of discretion. It is "probably impossible" to reconcile the inclusions of the Merrill Lynch account number XXX15629 of Cathie Reisler and the pre-divorce settlement sums as described in finding of fact number 18 in the community property division, absent a remand of the community property division, because the community property is not represented in the divorce decree by any specific, identifiable award to each party. *See Jacobs*, 687 S.W.2d at 733. Even if we could, we cannot simply modify the decree by striking the Merrill Lynch account from the community property because to do so would be to make a new division of the estate of the parties, a matter within the discretion of the trial court. *See id.*

Whether the trial court abuses its discretion in dividing the property or commits reversible error in defining what property is properly a part of the community estate and therefore subject to division, the principle to be applied is the same. *See id.* Once reversible error affecting the just and right division of the community estate is found, we must remand the entire community estate for a new division. *See id.* Issue one, sub-argument 1, is decided in Cathie Reisler's favor. Accordingly, we need not address the remainder of issue one where Cathie Reisler claims the trial court made calculation errors or issue two where she claims that she should have received a disproportionate share of the community estate.

### III. MEDICAL INVESTMENTS

In issue four, Cathie Reisler argues the trial court erred when it valued the community's interest in the shares in medical investments for Plano Ambulatory Surgery Associates and Texas

Health Center for Diagnostics and Surgery[2] based on Keith Reisler's income approach valuations. Cathie Reisler asserts that there was no evidence to support the trial court's finding of fact number 18 as to these valuations because Keith Reisler's expert, "[Elizabeth] Schrupp's valuations of the [Plano Ambulatory Surgery Associates] and [Texas Health Center for Diagnostics and Surgery] are unreliable." Specifically, Cathie Reisler argues Schrupp "made numerous computational errors in valuing [the shares], including errors in determining the entities' cash flows and an improper application of the small stock premium," and her error lies in her selection of the industry risk premium because she used the 2011 edition of the Ibbotson Stocks, Bonds, Bills and Inflation Valuation Yearbook ("SBBI"), instead of the 2012 edition. Keith Reisler argues that Cathie Reisler has failed to preserve this issue for appellate review because Schrupp's testimony was admitted without objection.

Generally, to preserve a complaint that an expert's testimony is unreliable, a party must object to the testimony before trial or when it is offered. *Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998); *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied). In particular, a party must object to or complain that the expert's underlying methodology, technique, or foundational data is not reliable. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232–33 (Tex. 2004); *Moore*, 383 S.W.3d at 198. A timely objection is required to give the trial court an opportunity to analyze the underlying basis of the opinion and to allow the offering party the opportunity to cure any defect that may exist. *Ellis*, 971 S.W.2d at 409 (objection required to give proponent of evidence opportunity to cure defect); *Coastal*, 136 S.W.3d at 233 (objection required to allow trial court opportunity to analyze underlying methodology, technique, or foundational data.); *Moore*, 383 S.W.3d at 198–99. Thus, as a

---

[2] The record refers to Texas Health Center for Diagnostics and Surgery as "Presby."

general rule, when an expert opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009); *Moore*, 383 S.W.3d at 199. However, an exception exists if the expert either provides no basis for his opinion or if the basis offered does not support the expert's opinion. *Pollock*, 284 S.W.3d at 818; *Moore*, 383 S.W.3d at 199. In such cases, the testimony is a mere conclusion and constitutes no evidence. *Pollock*, 284 S.W.3d at 818; *Moore*, 383 S.W.3d at 199.

The record shows that Schrupp provided a factual basis for her opinion. Schrupp testified she did not obtain the financial statements as to Plano Ambulatory Surgery Associates and Texas Health Center for Diagnostics and Surgery. However, she stated that she reviewed information on the dividends received from these investments, prior sales of the companies' stock, the contracts, and conversations with the Director of Plano Ambulatory Surgery Associates. Further, Schrupp stated she did a calculation engagement, rather than a business valuation engagement, because without the financial statements she could not "analyze [the] profitability compared to debt ratio compared to receivable turnover." With regard to Texas Health Center for Diagnostics and Surgery, Schrupp testified she used "both the income approach, capitalization of earnings, and market approach, prior sales method[s]."

On this record, we conclude the analysis of Cathie Reisler's complaint requires a review of the underlying methodology and foundational data that Schrupp used in forming her opinion. In particular, Cathie Reisler does not complain that Schrupp did not express a basis for her opinion or that the basis that Schrupp did offer was contradicted by the facts. Rather, relying on her own expert's testimony, Cathie Reisler asserts Schrupp should have used additional or different data, and the 2012 edition of the SBBI to select an industry risk premium. Cathie Reisler was required to make a timely objection, or assert this complaint to the trial court. She

–14–

did not do so. *See Moore*, 383 S.W.3d at 199–200; *Graves v. Tomlinson*, 329 S.W.3d 128, 146 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

Issue four was not preserved for appellate review.

## IV. CONCLUSION

The trial court erred when it divided the parties' community estate. Also, Cathie Reisler did not preserve for appellate review her complaint that the trial court erred when it valued the community's interest in the shares in medical investments for Plano Ambulatory Surgery Associates and Texas Health Center for Diagnostics and Surgery based on Keith Reisler's income approach valuations.

The portion of the trial court's final decree of divorce dissolving the marriage is affirmed and the portion dividing the parties' community estate is reversed and remanded for further proceedings consistent with this opinion.

/Douglas S. Lang/
DOUGLAS S. LANG
121586F.P05                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CATHIE REISLER, Appellant

No. 05-12-01586-CV     V.

KEITH REISLER, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-50508-2010.
Opinion delivered by Justice Lang.  Justices Moseley and Francis participating.

In accordance with this Court's opinion of this date, the trial court's final decree of divorce is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant CATHIE REISLER recover her costs of this appeal from appellee KEITH REISLER.

Judgment entered this 5th day of August, 2014.